## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS – DALLAS DIVISION

| | | |
|---|---|---|
| **MARY KAY INC.,** | § | |
| Plaintiff, | § | **Case No. 3:17-cv-02631-G** |
| | § | |
| **v.** | § | |
| | § | |
| **RASHA CUMMINGS, ET. AL.** | § | |
| Defendant. | § | |

## DEFENDANT RASHA CUMMINGS' ORIGINAL ANSWER

**NOW COMES RASHA CUMMINGS,** defendant in the above-styled cause ("Defendant" or "Cummings"), and files this original answer to Plaintiff's Complaint ("Complaint") filed by Plaintiff Mary Kay, Inc. ("Plaintiff"), responding to each allegation of the Complaint with the corresponding numbered statement below:

## I.   ANSWER TO INDIVIDUAL ALLEGATIONS

1. Cummings has no knowledge of how the plaintiff is arranged and thus cannot admit the allegation and thus denies it.

2. Admitted.

3. Cummings denies the imagined relationships and actions described by Mary Kay.

4. Plaintiff's allegations regarding jurisdiction are legal assertions and argument not subject to factual denial.

5.    Cummings denies the facts alleged in this paragraph.

6.    Cummings denies the facts alleged in this paragraph.

7.    Cummings denies the facts alleged in this paragraph.

8.    Cummings admits Mary Kay sells cosmetics, but must deny the rest of the allegations stated for lack of knowledge of such allegations.

9.    Denied. May Kay does not ensure that customers only receive products that meet any particular standard, in that Mary Kay does nothing to 'ensure' the quality of products once they leave the possession of Mary Kay, beyond that of harassing lawsuits.

10.    Denied. Mary Kay "ensures" nothing by its distributor arrangement. Many online sources reveal the failure of Mary Kay to thwart sales outside its network of distributors. At an example, Ebay website listed 53,898 Mary Kay products at this Answer's filing, not one of which is authorized by Mary Kay. The Mary Kay network and its attendant "Consultant Obligations" control and ensure nothing, as all of the 53,898 products for sale on Ebay are the result of the failure of such obligations. Amazon also has 8,953 listings for Mary Kay, presumably offerings which are unauthorized by Mary Kay. Many other sources exist, all of which reveal the paucity of Mary Kay's control.

11.    Defendant is unknowledgeable regarding the trademark history of Mary Kay, and thus must deny the alleged facts.

12.    Defendant denies that Mary Kay's trademark rights extend to a legal right to control all sales of all Mary Kay products for all time in all ways and all purposes, ignoring First Sale Doctrine and common sense.

13.    Defendant is unaware of the extent to which Mary Kay's trademarks are used, and denies that Mary Kay markets the Mary Kay Registered Trademarks.

14.    Defendant is unaware of the value of the Mary Kay Registered Trademarks based on any recognized source of high quality products, and absolutely denies that such products' value is based on any exclusive distribution.

15.    Denied. See Defendant's answer to paragraph 10 for obvious evidence which undeniably shows that Mary Kay's products are sold through many sales channels other than Mary Kay's authorized distributor network.

16.    Denied. Mary Kay controls only the first sale of its products, and depends only on a bare contractual duty borne by Mary Kay distributors to enforce quality controls, which distributors frequently abandon. All of the Mary Kay products sold on Ebay, Amazon, and every other unauthorized site are the product of a distributor abandoning the Consultant Obligations.

17.    Denied. See answer to paragraph 16, incorporated here. Mary Kay's distributors agree to follow rules laid down by Mary Kay primarily to protect the sales channel for Mary Kay products, and not to maintain any illusion of integrity and quality of Mary Kay products.

18.    Denied. All reasonable people using cosmetics will readily agree that brand new Mary Kay product kept in a hot car will be ruined, even if the product is brand new; they will also agree that properly stored cosmetics will last more than three years. Defendant denies any set standard three-year shelf life or expiration date indicated on the product packaging generally, and that consultants routinely have no idea what the expiration date is for the products they sell. The instructions allegedly given to consultants are mere excuse to claim the existence of a quality control system that is little more than paper support for lawsuits like this one.

19.    Defendant cannot answer for what Mary Kay consumers have "come to expect" but based on the empirical evidence which the Court is invited to take notice of, it appears that consumers expect to be able to purchase Mary Kay products on Ebay, Amazon, and a host of other sources which any consumer can find in seconds.

20.    Denied. Mary Kay's money back guarantee does not extend to its consultants, who are stuck with cosmetic product after they cease to be distributors. It is Mary Kay's no-return policy that results in ex-consultant sales to parties that leads to all non-consultant sales. It has always been true that Mary Kay could prevent all third-party sales by simply allowing its consultants to return unwanted product.

21.    Denied. Many sellers of Mary Kay products give the same money-back

guarantee that Mary Kay provides.

22.     Denied. No law or contract to which Defendant is a party prevents her from selling her lawfully purchased property.

23.     Defendant admits that she sells products originally manufactured by Mary Kay, but denies that they are "Mary Kay products" in any way beside their original manufacture.

24.     Admit. To complete Defendant's response, Defendant believed that the letter was from another Mary Kay seller just trying to scare her, as it appeared to come from an unprofessional non-Mary Kay source.

25.     Defendant admits she sells products manufactured by Mary Kay, but cannot verify any particular sale based on the allegation, and thus must deny this allegation.

26.     Defendant admits operating the "sarastradingpost" storefront.

27.     Defendant cannot admit the receipt of either a first or second cease-and-desist letter.

28.     Defendant admits she sells products manufactured by Mary Kay, but cannot verify any particular sale based on the allegation, and thus must deny this allegation.

29.     Defendant admits selling products which may be beyond an arbitrary shelf life set for litigation and control purposes, but must deny selling product that was

no longer useful for the purpose it was sold, and thus denies the allegation.

30.     Defendant admits selling products that were manufactured by Mary Kay, but denies that they are "Mary Kay products" in any other way. Defendant resells products she lawfully purchased.

31.     Defendant admits selling products which bear Mary Kay trademarks, just as used car lots sell cars bearing the registered marks of Ford, Chevrolet, etc. Defendant denies using such marks to indicate any relationship with Mary Kay, and in fact disavows any such relationship on her site, and further states explicitly that all her sales are made to consumers who are aware Defendant is not a Mary Kay consultant.

32.     Defendant admits she is not a Mary Kay Consultant, and denies the remainder of the allegations of this paragraph.

33.     Defendant denies the allegation except to the extent that she admits selling such products to consumers who are aware she is not a Mary Kay consultant and purchase the products with Defendant's money-back guarantee, but not the Mary Kay Satisfaction Guarantee.

34.     Denied. All of Defendant's sales come from Mary Kay consultants; the fact that they are sold outside the consultant network is proof that Mary Kay's quality control procedures are about economic control of Mary Kay products, and not about ensuring safe and efficacious cosmetic sales.

35.    Defendant admits selling products manufactured by Mary Kay beyond the arbitrary and unwarranted three-year shelf life that is adopted for the purpose of economic protection for Mary Kay.

36.    Denied.

37.    Denied.

38.    Denied. Mary Kay's assertion that the Defendant's actions are "malicious" is wholly unsupportable and should be considered sanctionable for its lack of support. To say that Defendant's actions are wanton or contrary to law is also supportable, but it is absurd for any reasonable person to state that Defendant's actions are malicious.

39.    Denied. Defendant can give many examples of Mary Kay consultants who did not follow the instructions of Mary Kay with regard to the care and storage of Mary Kay products, and demonstrated a lack of knowledge of Mary Kay products. Defendant puts her own money at risk with a money-back guarantee and has never had an issue, and can show that her quality control is at least equal to that of the typical Mary Kay consultant, as Mary Kay never or rarely audits its consultants to ensure proper storage of products. In short, Mary Kay's shelf-life assertions are pure propaganda to support legal action against those who deign to sell Mary Kay products outside the consultant network as Mary Kay abuses the judicial system for this purpose.

40.    Denied as stated previously.

41.    Defendant is unaware of the extent of Mary Kay's claimed trademarks, any licenses, limitations, or assignments, and thus must deny the allegation.

42.     See previous statement, incorporated here.

43.    See previous statement, incorporated here.

44.    See previous statement, incorporated here. Defendants' use of Mary Kay marks is to indicate original manufacture only; Defendant states clearly on her site that she is not affiliated with Mary Kay.

45.    Denied. See answer to para. 44, incorporated here.

46.    Denied. See answer to para. 44, incorporated here.

47.    Denied. See answer to para. 39 and 44, incorporated here.

48.    Denied. There exists more than 60,000 line items for sale on Ebay alone; Defendant's actions are not damaging Mary Kay's business relations, but allowing Mary Kay's customers to continue receiving discontinued product and remain as loyal as possible to Mary Kay at the same time that Mary Kay takes advantage of its consultants by refusing to take back unwanted purchased product and placing consultants in the position of taking a loss on unused inventory to selling it to third parties such as Defendant.

49.    Denied.

50.    Denied. Mary Kay cannot show that its consultant's provide product to

customers in any better shape than Defendant does. Mary Kay cannot show that Defendant is irreparably harming Mary Kay in any way, particularly when Defendant does not claim to be affiliated with Mary Kay, and explicitly states that products she sells are sold with any guarantee by Mary Kay, and when many of the products sold are discontinued older products and are sold only to customers who deliberately seek out those discontinued products.

51.    Denied. Rather, Mary Kay should pay for the fees of Defendant because Mary Kay is attempting to abuse the judicial system to wrongfully control all downstream sales based on shallow allegations of a need for "quality control" in an industry full of consumers which see through the excuse.

52.    Defendant is unaware of the extent of Mary Kay's claimed trademarks, any licenses, limitations, or assignments, and thus must deny the allegation.

53.     See previous statement, incorporated here.

54.    See previous statement, incorporated here.

55.    See previous statement, incorporated here. Defendants' use of Mary Kay marks is to indicate original manufacture only; Defendant states clearly on her site that she is not affiliated with Mary Kay.

56.    Denied.

57.    Denied. Rather, Mary Kay should pay for the fees of Defendant because Mary Kay is attempting to abuse the judicial system to wrongfully control all

downstream sales based on shallow allegations of a need for "quality control" in an industry full of consumers which see through the excuse.

58.    Denied as previously indicated.

59.    Defendant is unaware of the extent of Mary Kay's claimed trademarks, any licenses, limitations, or assignments, and thus must deny the allegation.

60.     See previous statement, incorporated here.

61.    See previous statement, incorporated here.

62.    See previous statement, incorporated here. Defendants' use of Mary Kay marks is to indicate original manufacture only; Defendant states clearly on her site that she is not affiliated with Mary Kay.

63.    Denied. See response in paragraph 62, incorporated here.

64.    Denied. See response in paragraph 62, incorporated here.

65.    Denied. See response in paragraph 62, incorporated here.

66.    Denied. See response in paragraph 62, incorporated here.

67.    Denied. Mary Kay cannot show that its consultant's provide product to customers in any better shape than Defendant does. Mary Kay cannot show that Defendant is irreparably harming Mary Kay in any way, particularly when Defendant does not claim to be affiliated with Mary Kay, and explicitly states that products she sells are sold with any guarantee by Mary Kay, and when many of the products sold are discontinued older products and are sold only to customers who

deliberately seek out those discontinued products.

68.     Denied. Rather, Mary Kay should pay for the fees of Defendant because Mary Kay is attempting to abuse the judicial system to wrongfully control all downstream sales based on shallow allegations of a need for "quality control" in an industry full of consumers which see through the excuse.

69.     Denied as previously indicated.

70.     Defendant is unaware of the extent of Mary Kay's claimed trademarks, any licenses, limitations, or assignments, and thus must deny the allegation. Defendants' use of Mary Kay marks is to indicate original manufacture only; Defendant states clearly on her site that she is not affiliated with Mary Kay. Defendant's care of Mary Kay's products is superior to many of Mary Kay's consultants' practices and knowledge of proper cosmetic use and storage. Customers of cosmetics have already adjudged Mary Kay's claims regarding the quality control of its products and found it wanting, or there would not exist ~60,000 line items for sale on Ebay for Mary Kay products. And in spite of these sales, Mary Kay can show no damage to its sales or trademark, or irreparable harm, and should not be able to show likelihood of success on its claims which should be precluded by, among other things, First Sale Doctrine.

71.     Denied. See previous statement in para. 70, incorporated here.

72.     Denied. See previous statement in para. 70, incorporated here.

73.     Denied. See previous statement in para. 70, incorporated here.

74.     Denied. See previous statement in para. 70, incorporated here.

75.     Denied. See previous statement in para. 70, incorporated here.

76.     Denied. See previous statement in para. 70, incorporated here.

77.     Denied. See previous statement in para. 70, incorporated here.

78.     Denied. Mary Kay cannot show that its consultant's provide product to customers in any better shape than Defendant does. Mary Kay cannot show that Defendant is irreparably harming Mary Kay in any way, particularly when Defendant does not claim to be affiliated with Mary Kay, and explicitly states that products she sells are sold with any guarantee by Mary Kay, and when many of the products sold are discontinued older products and are sold only to customers who deliberately seek out those discontinued products.

79.     Denied. Rather, Mary Kay should pay for the fees of Defendant because Mary Kay is attempting to abuse the judicial system to wrongfully control all downstream sales based on shallow allegations of a need for "quality control" in an industry full of consumers which see through the excuse.

80.     Denied as stated previously.

81.     The allegation is a legal assertion regarding a denied claim and thus denied.

82.     Denied. See previous statement in para. 70, incorporated here.

83.     Denied. See previous statement in para. 70, incorporated here.

84.     Denied. See previous statement in para. 70, incorporated here.

85.     Denied. See previous statement in para. 70, incorporated here.

86.     Denied. See previous statement in para. 70, incorporated here.

87.     Denied. See previous statement in para. 70, incorporated here.

88.     Denied. See previous statement in para. 70, incorporated here.

89.     Denied. See previous statement in para. 70, incorporated here.

90.     Denied. See previous statement in para. 70, incorporated here.

91.     Denied as stated previously.

92.     The allegation is a legal assertion regarding a denied claim and thus denied.

93.     Denied. See previous statement in para. 70, incorporated here.

94.     Denied. See previous statement in para. 70, incorporated here.

95.     Denied. See previous statement in para. 70, incorporated here.

96.     Denied. See previous statement in para. 70, incorporated here.

97.     Denied. See previous statement in para. 70, incorporated here.

98.     Denied. See previous statement in para. 70, incorporated here.

99.     Denied. See previous statement in para. 70, incorporated here.

100.    Denied. Rather, Mary Kay should pay for the fees of Defendant because Mary Kay is attempting to abuse the judicial system to wrongfully control all downstream sales based on shallow allegations of a need for "quality control" in an industry full of consumers which see through the excuse.

101.   Denied as stated previously.

102.   The allegation is a legal assertion regarding a denied claim and thus denied.

103.   Denied. See previous statement in para. 70, incorporated here.

104.   Denied. See previous statement in para. 70, incorporated here.

105.   Denied. See previous statement in para. 70, incorporated here.

106.   Denied. See previous statement in para. 70, incorporated here.

107.   Denied. See previous statement in para. 70, incorporated here.

108.   Denied. See previous statement in para. 70, incorporated here.

109.   Denied. See previous statement in para. 70, incorporated here.

110.   Denied. See previous statement in para. 70, incorporated here.

111.   Denied. See previous statement in para. 70, incorporated here.

112.   Denied as stated previously.

113.   The allegation is a legal assertion regarding a denied claim and thus denied.

114.   Defendant is unaware of the terms of any contract and business relationship with its consultants, and thus must deny.

115.   Defendant is unaware of the precise terms of any contract, business relationship, cease-and-desist letter with its consultants, and thus must deny.

116.   Denied. See previous statement in para. 70, incorporated here. Further, Defendant's purchases of cosmetic products are made irrespective of any contract, typically made through impersonal sales online and there is no evidence received

by Defendant that many of these sales are made by previous consultants.

117.   See para. 116. Defendant has acted only to purchase products manufactured by Mary Kay when they are offered; Defendant has not 'encouraged' Mary Kay product sales, simply accepted such offers.

118.   Denied as previously stated.

119.   Denied as previously stated.

120.   Defendant denies the claims and thus their individual elements and that conditions precedent have occurred.

121.   Denied. Rather, Mary Kay should pay for the fees of Defendant because Mary Kay is abusing the judicial system to wrongfully control all downstream sales based on shallow allegations of a need for "quality control" in an industry full of consumers which see through the excuse.

122.   Defendant also demands a trial by jury.

123.   Defendant denies that any remedy requested by Mary Kay is supported by facts or applicable law.

## II.   GENERAL DENIAL and RESPONSE

124.   Defendant generally denies all of Mary Kay's claims, allegations of fact, and conclusions of law, except as expressly admitted herein.

125.   Defendants' use of Mary Kay marks is to indicate original manufacture only; Defendant states clearly on her site that she is not affiliated with Mary Kay, and no one using her site can reasonably think that she is affiliated.

126.   Defendant's care of Mary Kay's products is superior to many of Mary Kay's consultants' practices. Defendant's knowledge of proper cosmetic use and storage is superior to that of the majority of Mary Kay's consultants – no reasonable person find that Defendant's sale of products manufactured by Mary Kay damages Mary Kay in any way.

127.   Additionally, customers using Mary Kay's cosmetics have already adjudged Mary Kay's claim that only sale from its network consultants and rejected the assertion that purchase from off-network sellers equates inexorably to product purchases of low quality product. As an example, about 60,000 Mary Kay products are listed sales on Ebay at any given time. Thus, Mary Kay's customers have rejected the idea that quality product can be purchased only through the consultant network.

128.   Many of the Defendant's sales come from discontinued items which Mary Kay no longer sells but cosmetic users wish to continue buying because users with allergies have, through trial and error, determined that they can use a particular product without suffering an allergic reaction. When Mary Kay decides to discontinue such products, those users are faced with buying third-party product

from sellers like Defendant, or changing brands completely, so Mary Kay was never going to retain those clients.

129.   Mary Kay's claim that a product magically transforms from genuine to not genuine as soon as it leaves the hands of one of its network consultants has been rejected by the cosmetic world and is facially illogical. Users often give the products to their friends for gifts, and hold them for one reason or another for some time, or even buy the product for a friend who reimburses the buyer. According to Mary Kay, the product that is given from a buyer to a user is not genuine product, in spite of the reality that the product has not changed. Or perhaps it is genuine unless the end user pays money to the middle-man. "Genuineness" is not determined by whether a person pays money for a product or receives it as a gift.

### III.   AFFIRMATIVE DEFENSES

A. <u>First Sale Doctrine</u>

130.   As this Court recognized in *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 852 (N.D. Tex. 2009), trademark infringement does not reach the sale of genuine goods bearing a trademark when a distributor resells trademarked goods without change, citing *Polymer Technology Corporation v. Mimran*, 975 F.2d 58, 61-62 (2nd Cir. 1992). In *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc. of Lafayette*, 988 F.2d 587, 590 (5th Cir. 1993), the Fifth Circuit adopted the doctrine,

stating that "trademark law does not apply to the sale of genuine goods bearing a true mark, even if the sale is without the mark owner's consent."

131.   First Sale Doctrine does not protect infringers who sell trademarked goods that are "materially" different from those sold by the trademark owner. *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Company*, 112 F.3d 1296, 1302-03 (5th Cir. 1997).

132.   Defendant can show that she has not acted in ways to suggest affiliation with Mary Kay, separating this case from *Weber* and other Mary Kay cases.

133.   Defendant is aware that the First Sale Doctrine is not technically an affirmative defense, as a plaintiff bears the burden of showing that the doctrine does not apply, but lists it here just as a matter of practicality.

B. Unclean Hands

134.   Plaintiff's products are sold by a network of consultants controlled by Mary Kay in a pyramid scheme based on sales to those consultants, classifying such as 'retail sales' but is actually little more than sales to its consultants, who are assumed to sell product in accordance with Mary Kay's rules against online sales.

135.   Though end customers have a Satisfaction Guarantee, consultants have no recourse to return unneeded product to Mary Kay, leaving them to absorb inventory and no way to dispose of it because Mary Kay refuses to accept returns and pay refunds based on lack of use, lack of sale, or any alleged shelf-life.

136.   Mary Kay has adopted a three-year shelf life which is unrelated to actual shelf life but is convenient to reduce a consultant's ability to reduce inventory.

137.   Mary Kay's policies are designed to sheer its own consultants in this pyramid scheme while claiming to protect consumers, but with this suit and others like it, Mary Kay seeks to employ the judicial system to continue the charade by browbeating anyone who dares to resell product sold to them from the unfortunate souls who were once sucked into promises made by Mary Kay recruiters.

138.   If Mary Kay was truly concerned about maintaining control, it could accept return of unused product, but it refuses. It is Mary Kay's policies in this regard which drive its ex-consultants to offer their inventories to third-party resellers like Defendant, who purchases these products through impersonal online sales as they are offered, and does not seek deliberate interference with current distributors.

139.   A well-proven unclean hands defense "will bar enforcement of a valid copyright when a plaintiff commits wrongdoing 'of serious proportions.'" *Saxon v. Blann*, 968 F.2d 676, 680 (8th Cir. 1992). The defense is available only where the plaintiff's misconduct is directly related to the merits of the controversy between the parties. *Mitchell Brothers Film Group v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979), cert. denied, 445 U.S. 917 (1980). Additionally, an unclean hands defense can prevent the award of equitable relief. *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 794 (5th Cir. 1999).

140.   Defendant asserts unclean hands as an affirmative defense against the claims of trademark infringement and injunctive relief based on Mary Kay's abusive policies regarding resell of the products it forces its consultants to keep even after it leaves the oppressive Mary Kay environment.

C.   Trademark Misuse

141.   Trademark Misuse is a valid affirmative defense where a defendant can show that a plaintiff has used its marks in violation of the antitrust laws or has made misrepresentations to the public in an attempt to increase the scope of its marks." *Deere & Co. v. MTD Holdings, Inc.*, No. 00-CV-05936, 2004 WL 1794507, at *3(S.D.N.Y. Aug. 11, 2004).

142.   Mary Kay seeks to abuse the trademark system and making spurious claims of infringement when none exists, even when customers are aware that a product line that was produced by Mary Kay is no longer produced, and they still want to buy supposedly outdated products from Defendant and others similarly positioned.

143.   Mary Kay's actions in this regard are an attempt to steal the value of ex-consultant inventory and maintain an iron grasp on all downstream commerce of its products, rather than to use trademarks for their purpose, which is to facilitate the public's ability to distinguish among competing products by providing consumers with clear product identifiers.

144.   Mary Kay's overbearing attempts to extend trademark use beyond the intent

of Congress constitutes trademark abuse and should prohibit any remedy sought by Mary Kay in this case.

D. Nominative Fair Use

145.   As this Court recognized in *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 854 (N.D. Tex. 2009), the nominative fair use doctrine allows the use of another's mark to "truthfully identify another's goods or services in order to describe or compare its product to the markholder's product," citing *Pebble Beach Company v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1550 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998).

146.   To succeed with the nominative fair use defense in this case, Defendant must show that she 1) only uses the Mary Kay as necessary to identify products she is selling, and (2) may not take action suggesting affiliation, sponsorship, or endorsement by Mary Kay." See *Weber*, 601 F.2d at 854.

147.   Defendant uses Mary Kay marks to let customers know what she is selling, and has never taken action to suggest an affiliation of any sort with Mary Kay, and thus the defense of Nominative Fair Use is appropriate in this case.

## E. ATTORNEY FEES FOR EXCEPTIONAL CASE

148.   Defendant herein requests a finding of an exceptional case and award attorney fees in accordance with applicable law.

## F.  PRAYER for RELIEF

Defendant requests dismissal of this case based on its egregious and unreasonable allegations and demands, and that the Plaintiff take nothing, and Defendant reasonable attorney fees, costs, and further relief to Defendant may be entitled to in law or equity.

Respectfully submitted,

By:/s/ Warren V. Norred
Warren Norred, Texas Bar No. 24045094
wnorred@norredlaw.com
C. Chad Lampe, Texas Bar No. 24045042
chad@norredlaw.com
200 E. Abram, Suite 300
Arlington, TX  76010
Tel. (817) 704-3984, Fax. (817) 524-6686
Attorneys for Def. Rasha Cummings

**CERTIFICATE OF SERVICE** - I certify that on December 27, 2017, a true and correct copy of Defendant's Original Answer was served by the Court's ECF system to all counsel of record.

By:/s/ Warren V. Norred
Warren V. Norred